IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CHRISTIAN JAMES GIESEKE,** | ) | |
| **ID # 45476-177,** | ) | |
| Movant, | ) | No. 3:15-CV-3907-B-BH |
| vs. | ) | No. 3:12-CR-0360-B |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| Respondent. | ) | Referred to U.S. Magistrate Judge |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

By *Special Order 3-251*, this habeas case has been automatically referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the *Final Amended Motion Under 28 U.S.C. § 2255, to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody*, received November 3, 2017 (doc. 27), should be **DENIED** with prejudice.

**I.  BACKGROUND**

Christian James Gieseke (Movant) challenges his federal conviction and sentence in Cause No. 3:12-CR-360-B.  The respondent is the United States of America (Government).

**A.     Plea and Sentencing**

By indictment filed on November 7, 2012, Movant was charged with four counts of production of child pornography in violation of 18 U.S.C. § 2251(a), (3), and two counts of possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (*See* doc. 1.)[1] On July 30, 2013, he was charged by superseding information with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2), and he pled guilty to that offense on August 2, 2013. (*See* docs. 41, 42.) Movant admitted in the factual resume that he downloaded and viewed on his Acer Aspire One laptop computer visual depictions of one or two minors engaged in sexually explicit conduct. (*See*

---

[1]   Unless otherwise indicated, all document numbers refer to the docket number assigned in the underlying criminal action, 3:12-CR-360-B.

doc. 36 at 2.) He also admitted that he produced the images with a camera, and that he produced and attempted to produce images and/or video of other minors. (*See id.* at 3.)

On January 27, 2014, the United States Probation Office (USPO) prepared a Presentence Report (PSR), applying the 2011 United States Sentencing Guidelines Manual (USSG). (*See* doc. 52-1 at 11, ¶ 35.) It prepared an addendum to the PSR on March 17, 2014, which calculated the total offense level as 39, after including a two-level increase for obstruction of justice. (*See* doc. 57-1 at 4, ¶ 49; 5, ¶ 56; 6, ¶ 71.) With a criminal history category of two, the resulting guideline range was 292-365 months' imprisonment. (*See id.* at 6, ¶ 109.) The statutory maximum sentence was 20 years' imprisonment, so the sentence guideline was 240 months' imprisonment. (*See id.*)

At the sentencing hearing on March 20, 2014, the parties litigated the two-level increase for obstruction of justice. (*See* doc. 65 at 8.) A detective with the Garland Police Department (GPD) testified that on June 6, 2012, GPD received two reports that Movant solicited a minor for lewd photographs, and that he recorded lewd images or videos of another minor, his daughter. (*See id.* at 10-18.) There was evidence that he was aware that he was going to be apprehended for those offenses. (*See id.* at 18-24.) Movant's stepfather told the detective that Movant visited him and Movant's mother on June 7, 2012. (*See id.* at 26-28.) Movant said that he was ill, and he went upstairs to use the restroom and to rest in a bedroom. (*See id.* at 30-31.) In the bedroom was a door to the attic in which the mother later found electronic devices. (*See id.* at 32.) His stepfather, mother, and brother were very cooperative during the police investigation. (*See id.* at 36.)

The PSR described how the police obtained evidence of the crime from Movant's stepfather and mother. (*See* doc. 53-1 at 7, ¶ 21.) It stated that on July 28, 2012, Movant's stepfather told the detective that the mother found a bag hidden beneath insulation in their attic. Among other items in the bag were the Acer computer and an electronic device on which were stored the images that

were the basis of the receipt of child pornography offense. (*See id.*; *see also* doc. 65 at 31-33.) The images were of one or both of Movant's daughters. Other electronic equipment was also found by police in a search of Movant's residence and car, and other equipment was turned over to the police by the Movant's family on July 22, 2012. (*See* doc. 53-1 at 6, ¶¶ 13, 15, 18; 7, ¶ 19.) On the numerous electronic devices were a total of over 1,000 images of child pornography. (*See id.* at 7, ¶ 22.)

Movant received a sentence of 240 months' imprisonment. (*See* doc. 60 at 2.) He appealed, and the Government's motion to dismiss the appeal was granted. (*See* doc. 71); *United States v. Gieseke*, 14-10380 (5th Cir. Dec. 10, 2014.)

**B.    Substantive Claims**

Movant's initial § 2255 motion was received on December 8, 2015. (*See* 3:15-CV-3907-B, doc. 1.) The Government filed its answer on February 8, 2016. (*See id.* doc. 5.) On February 12, 2016, Movant sought and was granted leave to amend his § 2255 motion to add new grounds for relief. (*See id.* docs. 6, 7, 8.) The Government filed an answer on April 12, 2016, and Movant filed a reply on June 1, 2016. (*See id.* docs. 11, 16.) On June 20, 2017, he sought and was granted leave to amend his § 2255 motion to add a new ground for relief. (*See id.* doc. 20.) The Government filed an answer on June 29, 2017. (*See id.* doc. 21.)

On September 5, 2017, Movant was granted leave to expand the record to include correspondence from counsel and affidavits, and the Government was provided 30 days to file a supplemental answer or response in light of the additional material. (*See id.* doc. 23.) On October 2, 2017, without seeking leave of court, Movant filed his second amended § 2255 motion. It purported to incorporate all prior filings and seeks to provide additional argument in support of his grounds for relief based on the new material. (*See id.* doc. 24.) On October 6, 2017, Movant was

ordered to file a final amended § 2255 motion that set forth all the claims that he sought to assert in this habeas action, regardless of whether he had previously asserted the claims in his initial motion or amended motions, or whether the claims were new grounds for relief. (*See* doc. 26.)

Movant's final amended § 2255 motion contends that counsel was ineffective for failing to investigate and interview his family members, object to the admissibility of evidence that was authenticated by perjury, and move to suppress evidence obtained in an illegal search. (*See* doc. 27 at 7.) The Government filed a response to the final amended § 2255 motion on December 4, 2017, and Movant filed a reply on December 21, 2017. (*See* docs. 31, 32.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996) (citations and internal quotation marks omitted). It is well-established that "a collateral challenge may not do service for an appeal." *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).

A failure to raise a claim on direct appeal may procedurally bar an individual from raising the claim on collateral review. *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the error. *Shaid*, 937 F.2d at 232. However, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of

4

judgments." *Massaro v. United States*, 538 U.S. 500, 503-04 (2003). The Government may also waive the procedural bar defense. *Willis*, 273 F.3d at 597.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Movant contends that counsel rendered ineffective assistance.

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. It guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *Id.* at 687. A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *Id*. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).

5

Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors. *Strickland*, 466 U.S. at 695-96.

To show prejudice in the sentencing context, a petitioner must demonstrate that the alleged deficiency of counsel created a reasonable probability that his or her sentence would have been less harsh. *See Glover v. United States*, 531 U.S. 198, 200 (2001) (holding "that if an increased prison term did flow from an error [of counsel] the petitioner has established *Strickland* prejudice"). One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

**A.    Perjury**

Movant contends that counsel should have objected to the admissibility of evidence that was authenticated by perjury. He claims that the detective suborned perjury to authenticate the Government's case.

Movant plead guilty and admitted in court and in the factual resume that he committed the crime of receipt of child pornography. Although he claims that the detective had his mother, stepfather, and brother execute affidavits that falsely stated the circumstances surrounding the detective's inventory and receipt of items found in the attic of their house, Movant does not assert that the detective testified falsely at the sentencing hearing, and he does not identify any evidence that was admitted through perjury. Because he plead guilty and stipulated to the facts, the items

6

found in the attic were not offered into evidence, so there were no objections for counsel to make concerning the authentication and admissibility of that evidence. Counsel was not ineffective for failing to raise a meritless objection. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999); *see also Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections"). Movant is not entitled to relief on this claim.

**B.     Witnesses**

Movant contends that counsel failed to investigate and interview his stepfather, mother, and brother, who would have told him about their interaction with the detective regarding items discovered in their home. He claims that his stepfather and mother were instructed by the detective to be on the lookout for certain items, so their search of their home was by private individuals at the behest of a law enforcement officer.

Movant's mother and stepfather executed declarations on August 7, 2017, which state that they believed that the items they found in the attic were those items for which the detective urged them to look. (*See* 3:15-CV-3907-B, doc. 22 at 50, 53-54.) Their declarations state that when the detective was given the items found in the attic, he did not document the items that were found, and he did not leave a receipt for those items. (*See id.* at 50, 54.) The stepfather stated that the detective returned days later and said that he left their house without inventorying the items or leaving them a receipt, and that there was no way to prove what he took. (*See id.* at 54-55.) The stepfather stated that the detective removed items from the bag, described them, had the mother write down the items as they were described, and then wrote down the serial numbers on the list. (*See id.* at 55.) The mother stated that when the detective returned, she could not swear that the electronic equipment that he brought with him was the same as the equipment that he took earlier. (*See id.* at 50-51.) The mother and brother subsequently executed declarations in which they stated that they did not recall

receiving a phone call from counsel, but if they had received a call from counsel, they would have provided the information that they set out in their previous declarations. (*See id*., docs. 33, 34.)

On July 7, 2013, counsel wrote to Movant that his office had reached out to Movant's family about the bag discovered in the attic, but the family was of little help. (*See id*. doc. 22 at 14.) He informed Movant that the family refused to tell him the sequence of events relating to the discovery of the bag and its delivery to law enforcement officials. (*See id*. at 21.) On July 22, 2013, counsel wrote to Movant that he had reached out to the family on a number of occasions to verify Movant's version of the events about the discovery of the bag in the attic and its delivery to law enforcement, but that the family not been helpful and had not shared the story about the bag. (*See id*. at 32.) He wrote that law enforcement had denied that there was a "be on the look out" provided to the family, and that the family "has not at all been helpful in helping address this or any other question, and I hesitate to file a Motion [to Suppress] based on what is an unsupported assertion." (*See id*. at 35.)

Movant's family's latest declarations do not state that counsel did not try to contact them by means other than a phone call, such as by having an investigator go to their residence and attempt to talk with them. Nevertheless, Movant knew from counsel's letters that he thought the family was not helpful and had not told him about the events surrounding the discovery and disclosure of the bag and its contents. If the family had been willing to tell counsel about the matters set out in their declarations, Movant does not explain why he did not ask them to contact counsel about the matter. According to a declaration from Movant dated November 7, 2017 (*see id*. doc. 29), his mother and brother visited him while he was awaiting trial. He does not allege that he asked them during that visit to contact counsel about the discovery of the bag and its contents, or about the family's interactions with the detective regarding those items before and after they were discovered. No declaration describes any attempt by the family to contact counsel, when it was apparent to Movant

that for whatever reason they had not discussed the matter with counsel. Movant has not shown that counsel's performance was deficient regarding the alleged failure to investigate or attempt to interview the family about the bag, its discovery, and the detective.

### C.     Motion to Suppress

Movant contends that counsel should have filed a motion to suppress evidence obtained in an illegal search. He claims that the detective told his family to be on the lookout for items such as the those discovered in the attic and in his car. He also claims that the detective did not inventory the items and leave a receipt for them when they were given to him, but he returned with the items several days later, had Movant's mother list the items, and left a receipt for the items.

#### 1.     *Lack of Evidentiary Support*

As noted, counsel advised Movant that his family had not been helpful. Counsel could have reasonably believed that without testimony from Movant's family, any motion to suppress would have been unsupported. The record reflects that he was hesitant to file an unsupported motion to suppress. *See Kimler*, 167 F.3d at 893; *see also Koch*, 907 F.2d at 527) ("counsel is not required to make futile motions or objections").

#### 2.     *Lack of Merit*

Even if the family would have testified to the statements in their declarations, counsel could have reasonably believed that a motion to suppress would have lacked merit.

"It is well-settled that if a private party wrongfully conducts a search or seizure of another's person or property the Fourth Amendment is not violated and that such private misconduct does not deprive the Government of the right to use evidence that it has obtained legally." *United States v. Blocker*, 104 F.3d 720, 725 (5th Cir. 1997). "The question is whether, in view of the circumstances of the case, the private party acted as an instrument or agent of the Government when he conducted

the search." *Id*. In making that determination, the Fifth Circuit has looked to "(1) whether the Government knew or acquiesced in the intrusive conduct; and (2) whether the private party intended to assist law enforcement efforts or to further his own ends." *Id*.

Here, Movant's mother executed an affidavit on August 2, 2012, in which she stated that she went to the attic to search for holiday decorations. (*See* 3:15-CV-3907-B, doc. 12 at 3.) She noticed that an area of insulation was not smooth and appeared to have been moved. She reached in and felt cloth, retrieved it, and saw it was the bag. (*See id*.) She turned the bag and contents over to the detective. Counsel could have reasonably believed that the court would hold that the Movant's mother did not act as a government instrument or agent and was not actively searching for the items when she discovered them in the attic while looking for decorations and exploring something unusual about the insulation.[1]

With regard to evidence found by Movant's mother in his car, according to counsel, Movant's wife wanted his belongings out of the residence and asked his mother to remove them, including his car. (*See* 3:15-CV-3907-B, doc. 22 at 29 n.1). Counsel stated that the car belonged to Movant and his wife, but it was registered to his stepfather. (*See id*. at 30.) Counsel also could have reasonably believed that the court would hold that the mother had the right to search the car because Movant's wife released it to her, and it was registered to her husband. *See United States v. Crain*, 33 F.3d 480, 484 (5th Cir. 1994) ("A person who has joint control over an automobile may

---

[1] In *United States v. Aldridge*, 642 F.3d 537 (7th Cir. 2011), a former corporate secretary to a suspected corporation, who was also the wife of the current director, had been told by authorities to "keep a lookout for suspicious materials." She thereafter gave incriminating material to the Security and Exchange Commission. The court held that her actions were private because she had a personal interest in helping the government investigate, including a desire to exonerate herself. In *United States v. Ellyson*, 326 F. 3d 522 (4th Cir. 2003), police arrested the defendant for possession of child pornography that police found in his residence. Officers told a woman living with him that she would be well-advised to turn in any illegal material in the residence so that she would not be held liable for the contraband. During a jail visit, the defendant asked her to dispose of computer disks that were in the residence, but she gave them to the police. The court held that she was not an agent of the police because she did not want to be responsible for items in the residence.

give valid consent to its search. *United States v. Varona–Algos*, 819 F.2d 81, 83 (5th Cir. 1988) (driver's consent to search vehicle valid against passenger who later claimed to be vehicle's owner)").

Further, although Movant visited his mother's home, he has not alleged facts that would show that he had an expectation of privacy in items he left in her attic. *See United States v. Ramirez*, 810 F.2d 1338, 1341 (5th Cir. 1987) (no Fourth Amendment violation where the defendant left items in a hotel room that he had vacated); *United States v. Escamilla*, 852 F.3d 474, 485 (5th Cir. 2017) ("Fourth Amendment rights are personal and may not be vicariously asserted. Accordingly, a person has no standing to challenge a search or seizure of property that was voluntarily abandoned.")

Finally, regarding the timing of the inventory of the bag's contents, the failure to leave a receipt itemizing seized property does not violate the Fourth Amendment. *See United States v. Ontiveros-Arambula*, No. EP-08-CR-2985, 2010 WL 11545459 at *3 (W.D. Tex. Apr. 7, 2010) (failure to compile an inventory or leave a receipt following an inventory search does not violate the Fourth Amendment). Counsel could have reasonably believed that the court could hold that a belated inventory and receipt did not violate the Fourth Amendment. Movant has not shown a reasonable probability that a motion to suppress would have succeeded.

### 3. *Strategy*

Counsel could also have chosen not to file a motion to suppress as a matter of strategy. His July 7 letter stated that if a motion to suppress were successful as to the images found on a device discovered in the attic that were the basis of Counts Two through Five in the initial indictment, and which were the basis for the receipt of child pornography charge in the superseding information, the Government would focus on the more than 1,000 images found on other devices that were not subject to the same suppression issues. (*See id.* at 13.) Counsel explained that the Government

11

could charge him with multiple counts of possession of child pornography and receipt of child pornography, which could result in a maximum sentence of 30 years for each count. (*See id.*) Counsel perceived that Movant could face a longer sentence if a motion to suppress was filed and the Government charged him with additional offenses and multiple counts.

Movant has not shown deficient performance or prejudice, or that he is entitled to relief on his claim of ineffective assistance of counsel.

## IV. EVIDENTIARY HEARING

No evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. A movant is entitled to an evidentiary hearing on his § 2255 motion only if he presents "independent indicia of the likely merit of [his] allegations." *United States v. Reed*, 719 F.3d 369, 373 (5th Cir. 2013). "[B]are, conclusory allegations unsupported by other indicia of reliability in the record, do not compel a federal district court to hold an evidentiary hearing." *Ross v. Estelle*, 694 F.2d 1008, 1012 n. 2 (5th Cir. 1983); *accord United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (noting that "[i]f the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from reliable third parties, she is entitled to an evidentiary hearing on the issue"); *United States v. Auten*, 632 F.2d 478, 480 (5th Cir. 1980) (noting that mere conclusory allegations are not sufficient to support a request for an evidentiary hearing). Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary. Movant's unsupported allegations do not entitle him to an evidentiary hearing, and the matters reviewed by the Court conclusively show that he is entitled to no relief.

## V. RECOMMENDATION

The motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 should be

**DENIED** with prejudice.

      **SO RECOMMENDED** this 7th day of February, 2018.

                                                    IRMA CARRILLO RAMIREZ
                                                    UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

      A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

                                                    IRMA CARRILLO RAMIREZ
                                                    UNITED STATES MAGISTRATE JUDGE